Good morning. May it please the Court. My name is Mark Dabowski. I represent the plaintiff appellant, Tony Feibusch. This Court has authored four opinions trying to discern what the Supreme Court meant in the Firestone case in determining whether language is sufficient to lead to a discretionary standard of review. One of those opinions was an en banc decision. But despite the fact that four times this Court has clearly stated that a formulation using the terminology satisfactory proof is not sufficient to convey discretion, the district court in this case erroneously determined that it did. In the Thomas case, this Court said that no matter how you slice it, requiring a claimant to submit satisfactory proof does not unambiguously confer discretion under Kearney. And then if you go back to Kearney, Kearney envisages three different scenarios about whether discretion is granted from the formulation satisfactory proof. And at most, using the Green and Wilkerson district court cases that we cited in our 20HA letters, the discretion is only arguably conveyed by the language in the Sun Life policy, a sole sentence that says proof must be satisfactory to Sun Life. But if it's arguably conveyed, it arguably is not conveyed. And the satisfactory proof, as this Court made clear in Kearney, is an objective standard. Moreover, in the Thomas case, the Court clarified even further what it had stated in the Kearney decision, that there's two parts to the conferral of discretion. First, there has to be language conferring discretion, and second, that language has to define the scope of discretion. At most in this case, the statement proof must be satisfactory to Sun Life conferred discretion, but it did not convey the scope of discretion. And as further illustration of that, the Seventh Circuit's recent decision in Diaz v. Prudential discusses the same issue that this Court had discussed in Thomas and in Sandy, as well as in Kearney, and pointed out that by itself, the fact that an administrator is deciding on a case-by-case basis who is entitled to benefits does not reveal whether a plan does or does not reserve discretion to the administrator. Similarly, a plan's requirement that an applicant submits satisfactory proof of entitlement does not necessarily mean that a plan administrator has discretion, because every plan requires submission of documentary proof, and the administrator is entitled to insist on something like a doctor's note rather than one's latest telephone bill. But even if this Court departs radically from its four prior decisions and decides that the statement proof must be satisfactory to Sun Life does confer discretion, that does not clearly answer the question of whether this Court or whether the district court should have applied an arbitrary and capricious standard of review. There's two further hurdles that have to be crossed before a discretionary standard of review may be applied. The first is the issue that this Court set forth in Madden v. ITT, and that is that the ERISA law is very, very carefully structured. And the ERISA law provides that there has to be initially a reservation of discretion by the plan sponsor, and then a delegation of that discretion to the party who's actually making the decision. Sun Life is not identified at all as a party having discretion having fiduciary responsibility under the plan. In fact, the plan sponsor, IDT, is the party listed as the plan administrator. And merely because of the fact that IDT purchased the insurance from Sun Life, that is not sufficient to meet the requirements of 29 U.S.C. section 1105C as this Court explained them in the Madden decision. There has to be more. There has to be an explicit delegation of discretion. And just as this Court said in the Ingram case, that here we are 17 years after satisfactory to Sun Life, that just is not going to cut it. There has been sufficient notice to insurance companies what they need to provide if they expect to receive an arbitrary and capricious standard of review. And then the final hurdle is the conflict of interest issue, and I recognize that the Court has that issue under consideration in the Abadi decision. But here we have two instances at least of situations that understanding Ninth Circuit case law would qualify as a conflict of interest, which would diminish, if not eliminate, any discretion whatsoever. The first is the departure from the accepted diagnosis after Dr. Borges' IME report. We have a situation here where Tony Feibusch initially qualified for benefits in 1999. There was no dispute as to whether she qualified for those benefits initially on a partial basis and then on a total disability basis after she could no longer work. And then we have the IME report by Dr. Borges, a doctor who was hired by Sun Life to conduct an independent examination. And what did Dr. Borges conclude? Dr. Borges stated that, at best, Ms. Feibusch could work no more than four hours a day. Now, under the definition of total disability in this policy, total disability is decided on an own occupation standard. The definition in the policy states the employee, because of injury or sickness, is unable to perform all of the material and substantial duties of his own occupation. We also know how to work to interpret that provision from both the McClure decision and from the Saffel decision issued by the Ninth Circuits. In both of those decisions, the Court made it clear that if the individual is unable to perform any single material job duty, the individual is precluded from performing the duties of their regular occupation, and total disability must be found. Saffel was even more specific in pointing out that if you interpreted it the other way, that if you have the capability of performing some duties, perhaps not all duties, that what that would do is conflate the two definitions of total and partial disability and eliminate the partial disability definition. Here, the partial disability definition in this policy requires that the individual be working. The partial disability definition does not apply at all if the individual is not working. And to further reinforce that point, this policy has a provision in it which liberalizes the standards for the more highly compensated employees, such as Ms. Feibusch. And that provision states that benefits cease when the employee is able to perform on a full-time basis all of the material and substantial duties of her own occupation, even if the employee chooses not to work. So this provision leaves it in the hands of the employee, and for good reason. Because partial work, part-time work, in a highly specialized field may not be feasible. It may not have been feasible for Tony Feibusch to find work as a technical writer on a part-time basis. Her employer indicated that it could no longer employ her on that basis. They needed a full-time employee. And that's why those types of provisions exist in the policy. But here what we have is we have all of this evidence showing that Ms. Feibusch is incapable of working on a full-time basis, including the insurance company's own doctor, including the insurance company's own employees, who documented in the claim file after Dr. Borges' examination that this means total disability under the policy. Yet just a couple months later, the accepted diagnosis was departed from, and the insurance company issued a decision saying no longer totally disabled, while ignoring the provision that I just quoted about having the partial disability, where the employee can choose not to work and still receive total disability benefits. The second ground for finding a conflict of interest is the financial motivation of the insurance company. This indemnity in this case of over $4,000 a month was considered a high indemnity claim by Sun Life. They made a point of documenting the reserves on the file. This was a company that was intent on saving money. And that's why they targeted Tony Feibusch's claim. And what do we do if we agree with you that the district court applied the wrong standard of review? What do we do? Vacate and remand? We have a couple of choices. I think the court What do we do with the district court's statement that even if she were to apply de novo standard of review, it should come to the same result? I think you're correct, Your Honor. I think that the proper course here would be to vacate and remand. But the court's alternate statement really does not make sense under the terms of this policy. The court's alternate statement toward the end of the district court's opinion says that, at best, the evidence shows that Tony Feibusch has partial work capacity, and but for her choice not to work, she didn't qualify for partial disability benefits. That statement, that conclusion reads out of the policy the provision that I just quoted. The employee is able to perform on a full-time basis all of the material and substantial duties of her own occupation, even if the employee chooses not to work. But the finding is erroneous for another reason, because the evidence really did not establish that Tony Feibusch that it was a dispute between Dr. Ting on the one hand and all these doctors lined up on the other hand. Instead, the evidentiary weight really goes completely in the other direction. Not only was Dr. Ting saying that Tony Feibusch couldn't work, there was Dr. Sontag, another doctor with whom Tony Feibusch consulted, who said that, at best, she could work two hours a day. Then we have Dr. Borgia, four hours a day. Then we have the job assessment in Dr. Stratford from Sun Life saying that she would need to take so many microbreaks of 15 minutes at a time that she couldn't possibly meet the 90% of her day keyboarding that was required. We have the functional capacity evaluation that says that she can't meet the fingering requirements. Obviously, the key physical requirement of somebody who's a technical writer working on a computer and having to type for at least seven hours a day. If she had to take 15-minute breaks every 30 minutes, she couldn't possibly meet that standard. The only evidence that we have that might support the possibility that Tony Feibusch could go back to work is Dr. Newman's report. But Dr. Newman performed no fingering test, and Dr. Newman reported that the baseline pain level was four out of ten. If we assume that zero is no pain and ten is pain is so bad, I have to go to the emergency room right away, the minute Tony Feibusch reported for work, she'd be halfway to the emergency room. It is impossible to conceive of a situation that Tony Feibusch would be able to work at a highly demanding technical job if she's experiencing that much pain. Let me refer my question the other way. If a de novo standard of review applies here, could the district court on this record grant summary judgment one way or the other? First of all, I don't think that the district court could grant summary judgment one way or the other. So the district court would have to conduct an evidentiary hearing of some sort? I think what the district court would have to do — To take findings of fact and conclusions of law? Correct. Exactly. And on this record, there is no rational way that the district court could enter judgment in favor of Sun Life, because the evidence was so strongly in favor of Tony Feibusch that the weight of the evidence under any kind of a weighing standard favors the continuation of benefits because, as the Court said, at the test — You seem to be arguing for a summary judgment in your favor, whereas it seems like what we should be doing is remanding for a trial under your theory. That's correct. But I think that another way to look at this case is the way that the Ninth Circuit framed the Newcomb v. Standard Insurance case, where in the Newcomb case, we had a number of medical reports saying that Dr. Newcomb was not capable of working as a surgeon anymore due to neurological problems. The insurance company produced one doctor who said that Dr. Newcomb should be able to work. The Court said — Yeah, but I'm not — that's really not answering my question. You're not asking for a summary judgment in your favor, are you? I'd like to, but I — Yeah, but you're — are you? But I think based on this record, I think that the case does need to be remanded. Right. So if it's remanded, there's going to be a trial, there's going to be evidence, and we can't tell what the outcome's going to be. Under Kearney, the Court can conduct a paper trial. The Court can take the evidence as it exists, or the Court, in its discretion, may decide to hold an evidentiary proceeding. We discussed that during the course of the oral argument, if this Court read the transcript. And it appeared as if the Court — the district court was leaning in the direction of holding an evidentiary hearing prior to granting summary judgment to Sun Life. But that's going to be within the Court's discretion. I think realistically, the proper resolution of this case is to remand the case to the district court for a reassessment of the evidence de novo. And that's the outcome that we're seeking here. And the district court would — if the district court has to conduct a trial, it would be — the district court would have to issue findings of fact and conclusions of law, in other words, make credibility determinations, even if it's on the paper. That's an excellent question, because Kearney is unclear on that point. I think that that's probably correct, but it's hard to make credibility determinations based on a cold record. I suppose it's reasonable to say that that — I was just supposing that. I was just — you know, my — my main question was whether or not on this record the Court could grant summary judgment one way or the other. Summary judgment means there's no tribal issue of fact. I don't see that the Court — No dispute of fact. I don't see — As a matter of law, one side or the other is entitled to summary judgment. I agree with that. And I don't see that, based on this record, that summary judgment is appropriate. If it's a weighing of the evidence type of procedure a la Kearney, I think that it would be — it could be reasonable for this Court to grant judgment to Tony Feiblish. But realistically, I think the proper outcome is to remand the case back to the district court. Okay. Thank you. Thank you. May it please the Court. My name is Mark Schmitke, and I'm here today representing Sun Life Assurance Company of Canada. It is our position that there are two ways in which the district court can be affirmed in this case. The first is to apply an arbitrary and capricious standard because the policy grants discretion to Sun Life and to determine that Sun Life's decision was reasonable, as did the district court. The second is to affirm the district court on the De Novo ruling based on the fact that the district court's findings are not clearly erroneous. The district courts in these proceedings have discretion under De Novo. Your Honor, summary judgment, is it appropriate for the district judge to make findings? She did that. And then if you — Well, that's my question. Is that appropriate? Because summary judgment is a decision that there is no reasonable question of fact. Well, reasonable is the key word here, Your Honor. What she said, in her opinion, at the end of the day is, if I were to hold a trial in this case, which would be a bench trial because that's what's required under De Novo, would I review to the same paper record that I reviewed in conjunction with summary judgment? And that's her discretionary authority to do so. In fact, this Court has held that that would be the preference, that you do not admit additional evidence unless the district court finds that it is necessary to conduct an adequate review. Having done that, she's going to review the same evidence that she's already reviewed. And she's already told this Court — Does she have to issue findings? She's already done that. No, no, no. She didn't issue findings. I think the finding — I think what she has to do — She didn't grant summary judgment here. She did something else. I understand that, Your Honor. But I think that the — So she would have to issue findings, correct? The findings are in her current opinion. I think they suffice. They're going to be no different on a remand. On summary judgment. I'm sorry. On a summary judgment, you cannot enter findings, because what a summary judgment says is there is no question of fact. But she has spelled out the facts in a detailed fashion, in a lengthy fashion, to demonstrate that she's poured through the very same evidence that she's going to look at again. She said exactly what she felt about that evidence all the way through, and at the end of her opinion said, in case there's no question — She hasn't heard any evidence. It's the same evidence, Your Honor. It's the same record evidence. She might credibility findings where there's a dispute of fact? She can make those determinations on a paper record. Most of these cases are tried on a paper record. In fact, Kearney, Mongaluzzo, and other cases in this circuit, and all the circuits say that a district court in a de novo proceeding has discretion to limit its review to the administrative record. And she specifically stated that's how she would exercise her discretion, that she would not look at any other evidence. And that if she looked at this record from a de novo perspective, she would find that overwhelming evidence supported the determination. There's nothing different that's going to happen back in the district court, absolutely nothing. It's the same evidence, and she's already told us how she would rule. So a remand accomplishes nothing. I find it interesting that the plaintiff appears here as appellant and says this record does not support summary judgment for the plaintiff because the plaintiff was arguing for a summary judgment, too, in the lower court. These were cross motions. And a district court ruled in favor of Sun Life. Kennedy, you can certainly argue for a summary judgment, but if it isn't granted, it isn't granted. But the whole basis, as I see it, of the case as it comes to us is that a summary judgment was granted. Now, the question of what she might do later, she may have given an indication, but we don't know. I don't – I disagree, Your Honor. I think she stated very clearly what she would do. And I think she stated, knowing full well where this case was going, once she ruled. And I think she wanted this Court to know what she would do in a de novo proceeding. And she stated it very clearly, that she would limit her review to the evidence in the record, and that she would find overwhelming evidence favoring the denial in this case. That's very clear. And it's the same evidence. Kennedy, that is not the basis of her decision. That was not her – She said if, if, but that what we're reviewing is what she did, summary judgment. I agree with that, Your Honor. But in the case like Newcomb, I think at the end of the day, this Court has to consider what is the point of sending it back when the district judge has already told us the two things she needs to tell this Court, what evidence she's going to look at and what decision she's going to make. Kennedy, is that permissible for us to determine the what-if sort of situation when what is before us is a judgment that is a summary judgment rendered by the Court? I think – I say absolutely in these ERISA proceedings, because the evidence is on the paper record. It's not a case where there's going to be witnesses. Not necessarily. Well, nobody – nobody ever – We don't know. They can be. Well, they can be. But in this case, nobody ever even proposed any witnesses. Well, the Court goes back. We don't know. Well, the Court determined everything based on everything she had in front of her that she would not need to go beyond the record, and for good reason. This record is loaded with medical evidence. This record is – is yea thick. It's four volumes in the supplemental appendix. She doesn't need other evidence to determine whether Sun Life's decision was reasonable or whether it was correct. This record contains two IMEs, an independent functional capacity evaluation, and reviews by two consulting doctors. I don't know what more plaintiff expects in a case like this. And to – and to say that using IMEs evidences a conflict of interest doesn't make any sense. If Sun Life had not used IMEs, the plaintiff would be here in front of this Court saying that evidenced conflict of interest. Sun Life took the appeals, went out of its way to get as much evidence as it could to consider the – the merits of plaintiff's claim, and ultimately determined that it was not – had no merit, that plaintiff was not disabled. And that's backed up by solid, thorough reviews by qualified physicians and other medical providers. And let me address the – Kennedy, then why didn't she render her decision on that basis? She did. She didn't. She rendered a summary judgment, which is before us to review. If she had rendered it on the other basis, if she had rendered it as a matter of having considered the evidence, then we would have to review that. But that isn't what she did. Well, but she considered in these types of proceedings, Your Honor, she considered the very same evidence that she's going to consider again. We don't know that. Well, she made that clear that that's all she would do. Well, that was then, before we might render an opinion that would change her mind. Well, you might. I don't know what this Court's going to do. But she said on this record, she would limit her review to the record, which is well within her discretion. You managed to persuade the district court that she should apply a arbitrary and capricious standard. Yes, Your Honor. And I'd like to talk about that, if that's okay. Do you have a specific question? No. I'm just concerned here that proof must be satisfactory to some life. How does that confer discretion? Because it states specifically a subjective standard. That is, an indirect object, if you will, an individual, a specific entity that needs to decide satisfaction. The issue in Kearney, and the only issue in Kearney, was does satisfaction require determination by a reasonable person, or does it require determination by a specific entity? And the language in Kearney didn't satisfy the latter requirement. Does this give the claim, does this give Sun Life discretion to interpret the plan? I believe it does. Where does it say that they can interpret the plan? Well, I believe it does, Your Honor, but there's no ---- But how do you get that out of this? The proof must be satisfactory to Sun Life. It's a more difficult argument. Right. It certainly gives Sun Life ---- Isn't that an essential factor in deciding whether or not this grants sufficient discretion? No. To get over, you know, to get beyond the de novo review? You can differentiate between discretion in interpreting the plan and discretion in interpreting ---- So they have limited discretion. It could very well be. The tense certainly ---- So limited discretion here, if you look at this, if you read the way this is set out, it says what is considered proof of claim. Right. And it says, starts out, proof of claim must consist of at least the following information, a description of the loss or disability, the date of the loss, the cause of the loss, says what you can submit, and then it says proof must be satisfactory to Sun Life. So the way I read this, even if you're going to give this any discretion at all, it's just to whether or not she submitted a sufficient claim. And that's ---- It has nothing to do with granting the type of discretion that's contemplated in the Supreme Court's decision in Firestone. Oh, I think it does. And I think if you read the Nance decision in the Tenth Circuit, that court said, we believe that clearly, unambiguously grants discretion to make the disability determination. It may or may not grant discretion to interpret terms of the plan, but there's really nothing that needs interpretation in this case. How about our case law? What does our case law say about granting discretion to interpret the plan as a signal as signaling the type of discretion that we expect to see? As far as I know ---- By the administrators. Okay. As far as I know, this circuit has never made the distinction that the Tenth Circuit made in Nance. That is to say that this language grants discretion for one thing but not another. Correct. Okay. But ---- We've not followed the approach of the Tenth Circuit. You haven't made that distinction. I don't think you've said one way or the other, Your Honor. Well, I think we've pretty ---- we've signaled pretty clearly that it needs to also ---- the discretion needs to also allow the plan administrator the authority to interpret the plan as well before it confers the type of discretion that gets you beyond a no-over review. I don't think that this Court has said it needs to be both, Your Honor. At least it hasn't had a case in which the language would differentiate between discretion to determine the ultimate fact and discretion to interpret ambiguous provisions of the plan. I know the Ninth Circuit has not gotten there yet. The Kearney case, though, if you look at the distinction in the Kearney case, clearly says, I think, that if the plan states that proof must be satisfactory to a specific entity, then that grants discretion. And one of the cases that Kearney cites is the Perez case out of the Sixth Circuit, which is an en banc decision, but it cites the dissent in Perez. And that's an important distinction. The majority in Perez held that language much like Kearney granted discretion. The dissent said, we disagree. But if the language had an indirect object, I think is the grammatical term, that is, if it said that discretion must be satisfactory to a specific entity, then the dissent in that case said, we would grant discretion. And I think Kearney, Kearney cites the dissent from Perez with favor, as explained by the relevant distinctions. Kennedy, how about the Ingram v. Martin Marietta case? Well, where the majority, written by Judge Fletcher, said if the plan administrator wants discretion, should say so. It's not difficult to write. The plan administrator has discretionary authority to grant or deny benefits. That would be the way you could specify it clearly. You could certainly do that, Your Honor. But this circuit has also said you don't need any magic words to do that. And in response to Mr. Dubofsky's point that, you know, Sun Life could have rewritten its contract, the fact of the matter is Sun Life has been told by multiple Federal courts, district and circuit, that its language grants discretion. Why would Sun Life scurry around to change that language? It wasn't until the ---- Why not? What's wrong with making it abundantly clear? If the circuit courts have already said it is. But why obfuscate all this? I mean, all you have to say is it grants discretion. Period. End of story. Subject. Let's move on. That's fine, Your Honor. But if all the courts have said, up until the district court decision in Greene last fall, if all the courts have said unanimously to Sun Life, this is sufficient. Nobody's going to go rewriting the contract, because rewriting contracts means getting approvals from 50 insurance commissioners. I mean, it's a lot of work. And if the this language grants discretion, which they have done. Well, I'm not so sure that's right. We've also got the Second Circuit, which kind of agreed with the Ingram case. Right. Well, that was not a Sun Life decision. That was a Sun Life policy. That was a ---- and it was dicta, really, in that case that says this kind of language doesn't grant discretion. But I think the Second Circuit would probably say it doesn't. And so be it. I think it would, in light of their ---- that opinion. No. I say ---- I'd say I think the Second Circuit would say it does not. Yeah. Yeah. I agree with you. But up until last fall, that was it. Everybody else was saying this language grants discretion. Because when a policy says that proof of loss must be satisfactory to the insurance company, it grants discretion. And every circuit to have addressed that kind of language has said it grants discretion. Every court to have addressed the language in a Sun Life policy has held it grants discretion. Uniformly. This all talks about proof of claim. What did I say? I don't know. Proof of loss. Is there a difference between proof of claim and proof of loss? No, not that I'm aware of. No, it's the same thing? I may have misspoke. I'm not aware of any difference between those terms. They're interchangeable. Well, the policy uses proof of claim. Yes, it does. Less consistent of at least the following. Yes. And all proof must be satisfactory. I think the key language just uses the word proof. It must be satisfactory to Sun Life. But it's in the context of what is considered proof of claim. Right. Right. Which includes the medical evidence, which includes all the background information about the claim, which includes the initial filing of the claim, and which includes the continued allegation of disability. All right. All those things grant discretion. Anything else? Your Honor, I have a few factual inaccuracies in plaintiff's reply, but they haven't had a chance to respond to. But I'd like to go back, if I could, on the, and I don't mean to belabor the point, but on the DeNovo finding of Judge Mollway. I think that her point was to make very clear where she was going. Maybe or maybe not that's sufficient. I think it is. I think there's plenty of evidence to show that she poured through this record, that she drew her conclusions, she made her findings granted in a summary judgment standard in which the evidence is undisputed. But she also said that to the extent the evidence becomes disputed and parts ways, we find, I find, that there was overwhelming evidence to support the decision. And I think that's, I think that's in order to be respected. I think she meant to tell this Court where she was going. And unless there are further questions, that's all I have. Thank you. Thank you. Just very briefly, turning to the last point that counsel reiterated about Judge Mollway's DeNovo finding. This is what it says at page 36 of the excerpts of record. This is a quote from the decision. Based on that record, if this Court conducted a trial, the Court would find from the overwhelming evidence that Fibush could work at least part-time. But that does not meet the terms of the policy that says that if she can work part-time and chooses not to work, she's still considered totally disabled under the policy. So that finding alone is not going to be an adequate basis upon which the Court below on remand would be able to grant judgment for son life. So in response to the Court's question, indeed, if this case is remanded, there is going to be more that Judge Mollway or preferably another judge would be doing in analyzing this evidence again. Secondly, with respect to the standard of review issue, as I indicated in my opening presentation, there are two factors that this Court requires. First is a conferral of discretion, and second is a definition of the scope of discretion. At best, at best, the language in this policy merely confers discretion, but it does not define the scope. And that's not enough under the Ingram case, because that does not clearly inform the plan participant that the decision made by the plan is going to be largely insulated from review. Sandy, besides the suggested language in Ingram, in the Sandy case, the Court said that there are three terms that a court is going to look for in deciding on de novo review versus deferential review. Those terms are authority, power, or discretion. None of those terms are used here. The Court stated that there are no magic words that a plan necessarily has to use, and then the Court went on to humorously say, we're not at Hogwarts. Well, we are at first-year contracts right now, and in first-year contracts, we learned from the restatement that the word satisfactory is only going to be given discretionary meaning if the contract between party A and party B is for something that relies on the personal satisfaction of the promissor. And in that end, that's the type of a situation like somebody promises to paint a portrait in order to meet the satisfaction of the party who's asking the painter to paint the portrait. In the Herzberger case, in the Kearney case, the word satisfactory was clearly explained to imply an objective standard. What section of the restatement are you quoting from? It's in the Kearney case. I think it's 228. Section 228. And if the Court wants to look at the Herzberger decision, although Herzberger from the Seventh Circuit relies on Illinois case law, the Illinois case law, in turn, is based on the restatement. And Herzberger is at 205, Fed Third, 327, and the references are on pages 330 and 331. Because this plan has not clearly conveyed to the plan participants that the decision to be rendered by Sun Life is going to be a decision that's largely insulated from judicial review, that means that the de novo standard of review should have applied here, and the district court erred in applying a discretionary standard. Thank you. Thank you. The matter will be submitted. See you, Brian. I'm fine. All right. All right. I'm all right. See, the next case on the calendar was Deffenbach versus Dekker.
judges: Hug, Merritt , Paez